UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY MOORE,

Plaintiff,

v.

Case No. 5:23-cv-11815
District Judge Judith E. Levy
Magistrate Judge Kimberly G. Altman

J. SAPH, E. PARR-MIRZA,
C/O LYNN, PATRICIA LAMB,
and JOHN DOES,

Defendants.
_______________________________/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR ALTERNATIVELY FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 15)**[1]

## I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Ricky Moore Jr. (Moore) is suing Nursing Supervisor Jay Saph (Saph), Health Unit Manager Erin Parr-Mirza (Parr-Mirza), Patricia Lamb, R.N. (Lamb), Corrections Officer Lynn (Lynn), two unknown corrections officers, and an unknown nurse. (ECF No. 1). In brief, he alleges that upon being transferred to the Macomb Correctional Facility (MRF) on January 7, 2020, he was not provided with an

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

inhaler to treat his asthma, which was medically documented. (*Id.*).

Before the Court is Saph, Parr-Mirza, and Lamb's joint motion to dismiss for failure to state a claim or, alternatively, for summary judgment on the basis of exhaustion. (ECF No. 15).[2] The motion is fully briefed, (ECF Nos. 17, 18), and ready for consideration.

For the reasons that follow, the undersigned RECOMMENDS that Saph, Parr-Mirza, and Lamb's motion to dismiss for failure to state a claim be GRANTED and Moore's claims against them be DISMISSED WITH PREJUDICE. The undersigned alternatively RECOMMENDS that defendants' motion for summary judgment on the basis of exhaustion be GRANTED and, in that instance, Moore's claims against them would be DISMISSED WITHOUT PREJUDICE. If either of these recommendations are adopted, the case would proceed against Lynn and the unnamed corrections officers and nurse.

## II. Background

### A. Allegations in the Complaint

Moore alleges that his asthma diagnosis was noted by the Michigan Department of Corrections (MDOC) in July 2010, and that he was prescribed an Albuterol inhaler at that time. (ECF No. 1, PageID.10). He was transferred to

[2] Lynn has yet to be served, and the unnamed defendants remain unidentified. To keep the case moving, the undersigned will enter an order directing the Michigan Department of Corrections to provide an address for Lynn.

MRF on January 7, 2020. (*Id.*). His inhaler prescription had been last renewed in October 2019, and was scheduled for renewal in January 2020. (*Id.*). Moore was not provided with a new inhaler following his transfer to MRF. (*Id.*).

On February 24, 2022, Moore was moved to segregation and complained about exacerbated asthma symptoms there. (*Id.*). He had still not received a new inhaler by that point. (*Id.*). He asked Lynn to retrieve his state-issued inhaler from his property, and upon doing so Lynn noted that it only had "4 puffs" remaining. (*Id.*). Lynn stated that he would contact healthcare to see if a refill could be provided. (*Id.*).

An unknown nurse then came to Moore and said she would get another inhaler for him because he really needed it. (*Id.*). She never returned to provide Moore with an inhaler despite witnessing his serious medical need related to asthma. (*Id.*).

On March 3, 2022, two corrections officers were involved in an incident where one of the officers pepper sprayed another inmate in the segregation unit. (*Id.*, PageID.11). The other officer checked each segregation cell for any inmates that had respiratory issues and needed to be removed before the pepper spraying occurred. (*Id.*). The officers refused to release Moore because he was not listed by healthcare as a chronic care asthma patient. (*Id.*). Upon the release of the chemical gas in segregation, Moore suffered breathing problems and felt "as if he

could die." (*Id.*).

Moore grieved this incident on March 6, 2022. (*Id.*, PageID.12). His grievance was denied at Step I by Saph and Parr-Mirza, who responded that Moore was not diagnosed with asthma until March 9, 2022, and was provided with an inhaler that day. (*Id.*). Moore appealed the decision, and at Step II, his grievance was denied by Lamb, who acknowledged Moore's history of asthma but found that the disruption of clinic operations due to the COVID-19 pandemic was to blame for Moore's lapse in asthma treatment. (*Id.*, PageID.13).

B. Step III Grievance Report

The moving defendants, Saph, Parr-Mirza, and Lamb have attached Moore's Step III Grievance Report to their motion. (ECF No. 15-3). The report lists all grievances that Moore has filed and pursued through Step III of the MDOC grievance process. (*Id.*). Defendants have summarized his grievances filed while incarcerated at MRF as follows:

| Grievance No.[1] (Ex. 2 Pincite) | MDOC Def.(s) grieved at Step I | Issue(s) grieved at Step I | Grievance Outcome |
|---|---|---|---|
| MRF-22-04-0790-28e (4–9) | None | After the mailroom made illegible copies of his legal mail on 2-24-22, they tried to find his original legal mail to make new copies but were unable to. | Step I: rejected (untimely)<br>Step II: rejection aff'd<br>Step III: rejection aff'd |
| MRF-22-03-0514-28i (10–17) | None | After Lynn brought him an empty inhaler on 2-24-22, a nurse took his inhaler for a refill, but he had yet to receive it. | Step I: denied<br>Step II: resolved<br>Step III: rejected (failure to resolve) |

(ECF No. 15, PageID.70).

As will be discussed below, defendants argue that the only relevant grievance, MRF-22-03-0514-28i (MRF-514), did not name Saph, Parr-Mirza, or Lamb and therefore failed to exhaust Moore's claims against them. Defendants also argue that exhaustion issue aside, Moore has not stated plausible claims against them.

## III. Legal Standards

### A. Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

B. Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco*

*Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Moore is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV. Failure to State a Claim

### A. Section 1983 Liability

The thrust of Moore's complaint against Saph, Parr-Mirza, and Lamb is that they were deliberately indifferent to his serious medical needs in denying his asthma-related grievance at Steps I and II. *See* ECF No. 1, PageID.11-12. They have no other alleged personal involvement in the events Moore describes. In Moore's fifth, sixth, and seventh listed causes of action, Saph, Parr-Mirza, and Lamb are accused of knowingly allowing Moore to suffer untreated asthma. *See id.*, PageID.14-15.

It is well-established that "[t]he 'denial of administrative grievances or the

failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Furthermore, as defendants note, "[c]onclusory, unsupported allegations of constitutional deprivation do not state a claim." (ECF No. 15, PageID.73 (citing *Ana Leon T. v. Fed. Rsrv. Bank of Chicago*, 823 F.2d 928, 930-31 (6th Cir. 1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)). In his complaint and response, Moore points to nothing more than failures to act and grievance denials for his claims against Saph, Parr-Mirza, and Lamb. These allegations are insufficient to state a viable claim against them.

Finally, if Moore's complaint is construed to state a claim of supervisory liability against Saph, Parr-Mirza, and Lamb, he would have to plausibly allege they are responsible for

> (1) an officially adopted or promulgated policy, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); (2) a custom or practice that is not formally adopted but is pervasive and long-standing, *id.*; (3) a failure to train, supervise, discipline, or adequately screen, *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); or (4) a particular decision or act made by a final policymaker, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

*Shepherd v. Metz*, No. 17-CV-11063, 2017 WL 11046664, at *5 (E.D. Mich. Aug. 2, 2017). Moore, however, has not made any such allegations. As such, he has not stated a plausible claim against Saph, Parr-Mirza, and Lamb.

## V. Exhaustion of Administrative Remedies

### A. Legal Standard

Defendants alternatively argue that Moore's claims should be dismissed for failure to exhaust his administrative remedies against them. Although the undersigned concludes that Moore's claims against Saph, Parr-Mirza, and Lamb should be dismissed for failure to state a claim, the exhaustion issue will be addressed for the sake of completeness. As explained below, Moore's claims could also be dismissed on this ground.

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles*

*by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ S (underscoring omitted).

"The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

B. Application

Moore only pursued one grievance through Step III that is relevant to the claims in this lawsuit, MRF-514. (ECF No. 15-3, PageID.108). In that grievance, filed on March 6, 2022, Moore stated that he had asthma and had not received an inhaler since he was moved to segregation. (*Id.*). He explained that Lynn looked for an inhaler for him on February 24, 2022, but the one Moore had in his property was empty, and that a nurse said she would order one for him but never did. (*Id.*).

The grievance was denied at Step I, "resolved" at Step II, and rejected at Step III for failure to attempt to resolve the issue with staff before grieving it. (*Id.*, PageID.105-111). Saph, Parr-Mirza, and Lamb argue that because Moore failed to name him in the grievance, his claims are unexhausted as to them.

"[A] prisoner ordinarily does not comply with MDOC 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief." *Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017) (citing *Reed–Bey*, 603 F.3d at 324-25). "An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits." *Id.*

Moore's grievance was not rejected for a failure to provide names because Moore named Lynn as the responsible party in addition to an unknown nurse. Where a grievance names one or more individuals but does not name the movant, the issue is not considered waived because the MDOC would have had no cause to reject the grievance for failure to provide names. *See, e.g.*, *Page v. Nenrod*, No. 4:22-CV-11571, 2023 WL 9065217, at *4 (E.D. Mich. Nov. 28, 2023), *report and recommendation adopted*, 2024 WL 37928 (E.D. Mich. Jan. 3, 2024). Moore was required to name every individual responsible for his mistreatment in order to exhaust his claims against them. *See Burton*, 321 F.3d at 575. As he did not name Saph, Parr-Mirza, or Lamb in this or any other relevant grievance that he pursued

through Step III of the grievance process, his claims are unexhausted as to them.

As explained above, the undersigned recommends dismissal with prejudice of Moore's claims against Saph, Parr-Mirza, and Lamb as he has not stated a cause of action against them. Alternatively, Saph, Parr-Mirza, and Lamb could be dismissed without prejudice for Moore's failure to exhaust administrative remedies.

## V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Saph, Parr-Mirza, and Lamb's motion to dismiss for failure to state a claim be GRANTED and Moore's claims against them be DISMISSED WITH PREJUDICE. The undersigned alternatively RECOMMENDS that defendants' motion for summary judgment on exhaustion be GRANTED and, in that instance, Moore's claims would be DISMISSED WITHOUT PREJUDICE. If either of these recommendations are adopted, the case would proceed against Lynn and the unnamed corrections officers and nurse.

Dated: April 18, 2024
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 18, 2024.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager